KEUFFEL & ESSER CO. *v.* UNITED STATES (No. 4748)[1]

United States Court of Customs and Patent Appeals, March 11, 1953

*John D. Rode* for appellant.

*Charles J. Wagner,* Acting Assistant Attorney General (*Arthur R. Martoccia,* special attorney, of counsel), for the United States.

---

[1] C. A. D. 516.

[Oral argument February 11, 1953, by Mr. Rode and Mr. Martoccia]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, COLE, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision, C. D. 1428, which sustained the action of the Collector of Customs at the port of New York in classifying imported increment borers as cutting tools dutiable at the rate of 45 per centum ad valorem in accordance with the provisions of paragraph 396 of the Tariff Act of 1930.

The court in reaching its conclusion overruled appellant's protest which claimed that the goods should have been classified as articles or wares not specially provided for, composed wholly or in chief value of steel, dutiable at 22½ per centum ad valorem in accordance with the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Geneva Trade Agreement, 82 Treas. Dec. 305, T. D. 51802.

The parties at the trial agreed that the imported articles are composed wholly or in chief value of steel, and a sample thereof was received in evidence as appellant's Collective Exhibit 1. The record otherwise consists of the usual documentary evidence and the testimony of the witness Robert W. Anderson, called by appellant.

Paragraph 396 reads as follows:

Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; pipe tools, wrenches, spanners, screw drivers, bit braces, vises, and hammers; calipers, rules, and micrometers; all the foregoing, if hand tools not provided for in paragraph 352, and parts thereof, wholly or in chief value of metal, not specially provided for, 45 per centum ad valorem.

Paragraph 397 as amended by T. D. 51802, and so far as pertinent, reads:

Articles or wares not specially provided for, * * *:

* * * * * * *
Composed wholly or in chief value of iron, steel, lead, * * *:

* * * * * * *
Other * * *_____22½% ad val.

The witness Robert Anderson, an engineer, had been associated with Keuffel & Esser, the appellant in this case, since April 1941 and was in charge of its production department. The firm deals in engineering instruments and supplies, including squares, triangles, drawing instruments, slide rules, scales, transits, levels, alidades, and increment borers, such as exemplified by Collective Exhibit 1. The following excerpts from the record are deemed pertinent to the issue presented:

By Mr. Rode:

Q. Will you please describe, Mr. Anderson, what Collective Exhibit 1 consists of? A. Without the device or with the device?

Q. No, using the device, when the Court is through with it. A. The device consists of three parts. This is the handle, the auger and the extractor. The auger is inserted in the handle, and locked in place with a latch. The extractor is set aside. The device is then taken and by pressure against the outside of a tree and directed toward the center of the trunk by pressure and turning, you project the auger into the tree until you reach the desired depth. While the auger is still in the tree, the extractor is inserted through the hollow portion of the auger to its full position. Then, the whole device is backed out of the tree by turning in the reverse direction. Then, by *unloosening* the latch, the specimen can be drawn out from it.

Q. Specimen of what? A. A specimen of the tree from the bark through the center of the tree, the purpose being—shall I explain the purpose?

Q. Yes. A. The purpose is to determine the nature of the grain structure. Any rotten portion or the like that the tree might contain, it is in standing timber. It is also used by telephone and telegraph companies to examine telephone poles. The whole purpose is to get a sample of the tree or sample of standing wood from the outside to the center. They come in various lengths for various sizes of trees, from two and a half to about twenty-four inches in length, and that fundamentally was the only purpose of the device.

Judge Rao: How do you repair the hole made in the tree?

The Witness: It is hoped that the tree will grow over the whole hole, because it would leave—if it left a bad hole in the tree, it would spoil a portion of the lumber. They make as small a hole as possible, with the hope that tree will heal the wound and there will be no mark left in the interior of the tree.

Judge Lawrence: It is used exclusively in standing timber?

The Witness: It could be used for other timber, it is used in the bowl or trunk in standing timber but it could be used in fallen timber, but in fallen timber, you see, you see the grain structure from the end of the tree.

Judge Lawrence: As I see it, in its operation, it functions very much as a gimlet and auger, is that right?

The Witness: The function is the same but the purpose is different.

Judge Lawrence: I mean, is it operated manually?

The Witness: Entirely manually.

By Mr. Rode:

Q. Mr. Anderson, is the sole purpose of using this device to extract a sample of the tree for analysis or examination? A. That is its only purpose.

Q. Is it the purpose of the instrument to bore a hole in the tree in any way? A. If you could do it without cutting the tree at all, it would be more desirable.

  *   *   *   *   *   *   *

Q. Have you ever heard the term cutting tool employed, Mr. Anderson? A. I have.

Q. Have you ever seen cutting tools? A. I have.

Q. Have you used cutting tools? A. I have.

Q. Have you ever seen cutting tools advertised in catalogs or trade papers? A. I have.

Q. Does Keuffel & Esser sell cutting tools to the hardware trade? A. They do not.

Q. Have you ever seen articles such as Exhibit 1 listed as a cutting tool any place? A. I have not.

Q. Would you say that a drill was a cutting tool? A. I would, yes.

Q. A bit? A. I would, yes.

Q. Or, a gimlet? A. Yes.

Q. Gimlet-bit? A. Yes.

Upon the testimony hereinbefore set forth, together with other evidence of similar import contained in the record, the United States Customs Court properly concluded that the goods in issue are in fact cutting tools as classified and assessed with duty by the Collector of Customs. The judgment appealed from is accordingly *affirmed.*

JACKSON, J., retired, was recalled to participate in this case in place of JOHNSON, J., absent on account of illness.